UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA              :      **INDICTMENT**

          -v-                         :      S1 11 Cr. 300 (JSR)

CARL KRUGER,                          :
RICHARD LIPSKY,
AARON MALINSKY,                       :
MICHAEL TURANO,
SOLOMON KALISH,                       :
DAVID ROSEN,
ROBERT AQUINO, and
WILLIAM BOYLAND, JR.,                 :

                                      :
          Defendants.
                                      :

- - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 07 2011

## COUNT ONE

### (Honest Services Fraud Conspiracy)

The Grand Jury charges:

1.    From at least in or about 2006 through and including in or about March 2011, in the Southern District of New York and elsewhere, CARL KRUGER, RICHARD LIPSKY, AARON MALINSKY, and MICHAEL TURANO, the defendants, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341, 1343, and 1346, to wit, KRUGER, while serving as a member of the New York State Senate, and in connection with his official position as a member of the New York State Senate, received bribes from LIPSKY and MALINSKY which

KRUGER directed to bank accounts established by TURANO for the benefit of KRUGER, TURANO, and others, and in exchange for receiving these corrupt payments, KRUGER would and did undertake action, in connection with his official position as a member of the New York State Senate, to benefit LIPSKY, LIPSKY's lobbying clients, and MALINSKY as the opportunities arose.

2.   It was a part and object of the conspiracy that CARL KRUGER, RICHARD LIPSKY, AARON MALINSKY, and MICHAEL TURANO, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive New York State and its citizens of their intangible right to KRUGER's honest services, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and took and received therefrom such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter

and thing, in violation of Section 1341 of Title 18 of the United States Code.

3.   It was a further part and object of the conspiracy that CARL KRUGER, AARON MALINSKY, RICHARD LIPSKY, and MICHAEL TURANO, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive New York State and its citizens of their intangible right to KRUGER's honest services, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice would and did transmit and cause to be transmitted by means of wire and radio communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, to wit, electronic mails ("emails"), in violation of Section 1343 of Title 18 of the United States Code.

### Overt Acts

4.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about December 28, 2010, CARL KRUGER, the defendant, directed a Senate staff member to allocate to a client of RICHARD LIPSKY, the defendant, approximately $500,000 in state funds that KRUGER controlled.

3

b.    On or about February 11, 2011, LIPSKY met with KRUGER inside LIPSKY's car in the vicinity of 18th Street and Fifth Avenue in Manhattan.

c.    On or about January 28, 2011, AARON MALINSKY, the defendant, met with KRUGER in the lobby of a luxury hotel in midtown Manhattan.

d.    On or about November 15, 2006, MICHAEL TURANO, the defendant, established a bank account in the name of Olympian Strategic Development Corp.

(Title 18, United States Code, Section 1349).

## COUNT TWO

### (Bribery and Travel Act Conspiracy)

The Grand Jury further charges:

5.    From at least in or about 2006 through and including in or about March 2011, in the Southern District of New York and elsewhere, CARL KRUGER, RICHARD LIPSKY, AARON MALINSKY, and MICHAEL TURANO, the defendants, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 666(a)(1)(B), 666(a)(2) and 1952(a)(3).

6.    It was a part and an object of the conspiracy that CARL KRUGER and MICHAEL TURANO, the defendants, would and did

4

solicit and demand and accept and agree to accept something of
value from a person, to wit, KRUGER and TURANO accepted into bank
accounts established by TURANO for the benefit of TURANO, KRUGER
and others, payments from LIPSKY and MALINSKY, intending for
KRUGER to be influenced and rewarded in connection with a
business, transaction, and series of transactions of such
government and agency, involving something of value of $5,000 and
more, while the State of New York was in receipt of, in any one
year period, benefits in excess of $10,000 under a Federal
program involving a grant, contract, subsidy, loan, guarantee,
insurance and other form of Federal assistance, in violation of
Title 18, United States Code, Section 666(a)(1)(B).

    7.   It was a part and an object of the conspiracy that
RICHARD LIPSKY and AARON MALINSKY, the defendants, would and did
corruptly give, offer, and agree to give something of value to a
person, to wit, LIPSKY and MALINSKY made and caused the making of
payments to bank accounts established by MICHAEL TURANO, the
defendant, for the benefit of TURANO, CARL KRUGER, the defendant,
and others, with intent to influence and reward KRUGER, an agent
of a state government, in connection with a business,
transaction, and series of transactions of the State of New York,
involving something of value of $5,000 or more, while the State
of New York was in receipt of, in any one year period, benefits
in excess of $10,000 under a Federal program involving a grant,

5

contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2).

8.   It was further a part and an object of the conspiracy that CARL KRUGER, RICHARD LIPSKY, AARON MALINSKY, and MICHAEL TURANO, the defendants, would and did travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit, LIPSKY and MALINSKY made and caused the making of payments to bank accounts established by TURANO for the benefit of TURANO, KRUGER, and others, in violation of New York Penal Law Sections 200.00 and 200.10, and thereafter would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

<u>**Overt Acts**</u>

9.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about December 28, 2010, CARL KRUGER, the defendant, directed a Senate staff member to allocate to a client of RICHARD LIPSKY, the defendant, approximately $500,000 in state funds that KRUGER controlled.

b.    On or about February 11, 2011, LIPSKY met with KRUGER inside LIPSKY's car in the vicinity of 18th Street and Fifth Avenue in Manhattan.

c.    On or about January 28, 2011, AARON MALINSKY, the defendant, met with KRUGER in the lobby of a luxury hotel in midtown Manhattan.

d.    On or about November 15, 2006, MICHAEL TURANO, the defendant, established a bank account in the name of Olympian Strategic Development Corp.

(Title 18, United States Code, Section 371.)

## COUNT THREE

### (Honest Services Fraud Conspiracy)

The Grand Jury further charges:

10.    From at least in or about 2006 through and including in or about March 2011, in the Southern District of New York and elsewhere, CARL KRUGER, SOLOMON KALISH, DAVID ROSEN, ROBERT AQUINO, and MICHAEL TURANO, the defendants, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit mail fraud and wire fraud in violation of Title 18,

7

United States Code, Sections 1341, 1343, and 1346, to wit,
KRUGER, while serving as a member of the New York State Senate,
and in connection with his official position as a member of the
New York State Senate, would and did receive bribes from KALISH,
who controlled Adex Management, Inc. ("Adex"), ROSEN, while
serving as the Chief Executive Officer of the MediSys Health
Network ("MediSys") and its constituent hospitals, and AQUINO,
while serving as the Chief Executive Officer of Parkway Hospital,
which corrupt payments were directly or indirectly paid, or
intended to ultimately be paid, to Adex. KRUGER then received
payments from Adex, including payments made to Adex by a certain
hospice care company ("Hospice Company"), to bank accounts
established by TURANO for the benefit of KRUGER, TURANO, and
others. In exchange for receiving these corrupt payments KRUGER
would and did undertake action, in connection with his official
position as a member of the New York State Senate, to benefit
KALISH, ROSEN, MediSys, AQUINO, and Parkway Hospital as the
opportunities arose.

    11.  It was a part and object of the conspiracy that
CARL KRUGER, SOLOMON KALISH, DAVID ROSEN, ROBERT AQUINO, and
MICHAEL TURANO, the defendants, and others known and unknown,
having devised and intending to devise a scheme and artifice to
defraud, and to deprive New York State and its citizens of their
intangible right to KRUGER's honest services, and to obtain money

8

and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and took and received therefrom such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter and thing, in violation of Section 1341 of Title 18 of the United States Code.

12.  It was a further part and object of the conspiracy that CARL KRUGER, SOLOMON KALISH, DAVID ROSEN, ROBERT AQUINO, and MICHAEL TURANO, the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive New York State and its citizens of their intangible right to KRUGER's honest services, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice would and did transmit and cause to be transmitted by means of wire and radio communications in interstate and foreign commerce, writings, signs, signals,

pictures, and sounds, to wit, electronic mails ("emails"), in violation of Section 1343 of Title 18 of the United States Code.

## Overt Acts

13.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about 2008, CARL KRUGER, the defendant, advocated on behalf of Parkway Hospital with an official in the New York State executive branch with oversight responsibilities for New York State hospitals.

b.   On or about August 30, 2007, after Adex had received a $10,000 check from the Hospice Company, SOLOMON KALISH, the defendant, signed a check to Olympian Strategic Development Corp. in the amount of $5,000 with a front memo notation, "[Hospice Company] Contract."

c.   On or about March 27, 2008, DAVID ROSEN, the defendant, sent an e-mail regarding KRUGER's interest in a proposed contract between MediSys and the Hospice Company.

d.   On or about June 25, 2008, ROBERT AQUINO, the defendant, caused Parkway Hospital to pay $20,000 to Adex.

e.   On or about November 15, 2006, MICHAEL TURANO, the defendant, established a bank account in the name of Olympian Strategic Development Corp.

(Title 18, United States Code, Section 1349).

10

## COUNT FOUR

### (Bribery and Travel Act Conspiracy)

The Grand Jury further charges:

14.  From at least in or about 2006 through and including in or about March 2011, in the Southern District of New York and elsewhere, CARL KRUGER, SOLOMON KALISH, DAVID ROSEN, ROBERT AQUINO, and MICHAEL TURANO, the defendants, and others known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed together and with each other to commit offenses against the United States, to wit, violations of Title 18, United States Code, Sections 666(a)(1)(B), 666(a)(2) and 1952(a)(3).

15.  It was a part and an object of the conspiracy that CARL KRUGER and MICHAEL TURANO, the defendants, would and did solicit and demand and accept and agree to accept something of value from a person, to wit, KRUGER and TURANO accepted and intended to accept into bank accounts established by TURANO for the benefit of TURANO, KRUGER and others, payments from KALISH, ROSEN, and AQUINO, intending for KRUGER to be influenced and rewarded in connection with a business, transaction, and series of transactions of such government and agency, involving something of value of $5,000 and more, while the State of New York was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant,

11

contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(B).

16.   It was a part and an object of the conspiracy that SOLOMON KALISH, DAVID ROSEN, and ROBERT AQUINO, the defendants, would and did corruptly give, offer, and agree to give something of value to a person, to wit, KALISH and AQUINO made and caused the making of payments, and ROSEN intended to make and cause the making of payments, to bank accounts established by MICHAEL TURANO, the defendant, for the benefit of TURANO, CARL KRUGER, the defendant, and others, with intent to influence and reward KRUGER, an agent of a state government, in connection with a business, transaction, and series of transactions of the State of New York, involving something of value of $5,000 or more, while the State of New York was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2).

17.   It was further a part and an object of the conspiracy that CARL KRUGER, SOLOMON KALISH, DAVID ROSEN, ROBERT AQUINO, and MICHAEL TURANO, the defendants, would and did travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on and facilitate the promotion,

12

management, establishment and carrying on of an unlawful activity, to wit, KALISH and AQUINO made and caused the making of payments, and ROSEN intended to make and cause the making of payments, to bank accounts established by TURANO for the benefit of TURANO, KRUGER, and others, in violation of New York Penal Law Sections 200.00 and 200.10, and thereafter would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

### Overt Acts

18.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about 2008, CARL KRUGER, the defendant, advocated on behalf of Parkway Hospital with an official in the New York State executive branch with oversight responsibilities for New York State hospitals.

b.   On or about August 30, 2007, after Adex had received a $10,000 check from the Hospice Company, SOLOMON KALISH, the defendant, signed a check to Olympian Strategic Development Corp. in the amount of $5,000 with a front memo notation, "[Hospice Company] Contract."

c.    On or about March 27, 2008, DAVID ROSEN, the defendant, sent an e-mail regarding KRUGER's interest in a proposed contract between MediSys and the Hospice Company.

d.    On or about June 25, 2008, ROBERT AQUINO, the defendant, caused Parkway Hospital to pay $20,000 to Adex.

e.    On or about November 15, 2006, MICHAEL TURANO, the defendant, established a bank account in the name of Olympian Strategic Development Corp.

(Title 18, United States Code, Section 371.)

## COUNT FIVE

### (Mail Fraud Scheme to Deprive New York State and Its Citizens of Their Legislators' Honest Services)

The Grand Jury further charges:

19.    From in or about 1997, through and including in or about September 2008, in the Southern District of New York and elsewhere, DAVID ROSEN, the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud New York State and its citizens of the honest services of certain New York State legislators, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, did place in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing to be

14

sent and delivered by a private and commercial interstate carrier, and took and received therefrom such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter and thing, to wit, ROSEN, while serving as the Chief Executive Officer of MediSys, paid and attempted to pay bribes, directly and indirectly, to New York State Assemblyman Anthony Seminerio, New York State Assemblyman William Boyland, Jr., and New York State Senator Carl Kruger in the form of, among other things, a consulting contract for Seminerio, a consulting job for Boyland, and a contract with the Hospice Company in which Kruger had an interest, all in exchange for their undertaking actions in connection with their official positions in the New York State Legislature to benefit MediSys and its constituent hospitals as the opportunities arose, and in connection therewith and in furtherance thereof, ROSEN sent and received materials and caused materials to be sent and received, including correspondence, checks, contracts, and other documents, using the United States mail and commercial carriers.

(Title 18, United States Code, Sections 1341 and 1346.)

## COUNT SIX

**(Wire Fraud Scheme to Deprive New York State and
Its Citizens of Their Legislators' Honest Services)**

The Grand Jury further charges:

20.  From in or about 1997, through and including in or
about September 2008, in the Southern District of New York and
elsewhere, DAVID ROSEN, the defendant, unlawfully, willfully, and
knowingly, having devised and intending to devise a scheme and
artifice to defraud New York State and its citizens of the honest
services of certain New York State legislators, and for obtaining
money and property by means of false and fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire communication in interstate and
foreign commerce, writings, signs, signals, pictures, and sounds
for the purpose of executing such scheme and artifice, to wit,
ROSEN, while serving as the Chief Executive Officer of MediSys
and its constituent hospitals, paid and attempted to pay bribes,
directly and indirectly, to New York State Assemblyman Anthony
Seminerio, New York State Assemblyman William Boyland, Jr., and
New York State Senator Carl Kruger in the form of, among other
things, a consulting contract for Seminerio, a consulting job for
Boyland, and a contract with the Hospice Company in which Kruger
had an interest, all in exchange for their undertaking actions in
connection with their official positions in the New York State
Legislature to benefit MediSys and its constituent hospitals as

16

the opportunities arose, and in connection therewith and in furtherance thereof, ROSEN transmitted and caused to be transmitted interstate electronic mail, interstate telephone calls, and interstate wire transfers of funds.

(Title 18, United States Code, Sections 1343 and 1346.)

## COUNT SEVEN

### (Bribery and Travel Act Conspiracy)

The Grand Jury further charges:

21.  From in or about 1997, through and including in or about September 2008, in the Southern District of New York and elsewhere, DAVID ROSEN, the defendant, Anthony Seminerio, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to commit offenses against the United States, to wit, to violate Title 18, United States Code, Sections 666(a)(1)(B), 666(a)(2) and 1952(a)(3).

22.  It was a part and an object of the conspiracy that New York State Assemblyman Anthony Seminerio would and did solicit and demand and accept and agree to accept something of value from a person, to wit, DAVID ROSEN, the defendant, intending for Seminerio, an agent of a state government, to be influenced and rewarded in connection with a business, transaction, and series of transactions of such government and agency, involving something of value of $5,000 and more, while the State of New York was in receipt of, in any one year period,

benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(B).

23. It was a part and an object of the conspiracy that DAVID ROSEN, the defendant, would and did corruptly give, offer, and agree to give something of value to a person, to wit, New York State Assemblyman Anthony Seminerio, with intent to influence and reward Seminerio, an agent of a state government, in connection with a business, transaction, and series of transactions of the State of New York, involving something of value of $5,000 or more, while the State of New York was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2).

24. It was further a part and an object of the conspiracy that DAVID ROSEN, the defendant, would and did travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit, the making of corrupt payments to Anthony Seminerio, in violation of New York Penal Law Sections 200.00 and 200.10, and thereafter would and did perform and attempt to

18

perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

### Overt Acts

25.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about August 13, 1997, DAVID ROSEN, the defendant, met with New York State Assemblyman Anthony Seminerio and one of ROSEN's subordinates, the chief executive officer of one of MediSys's constituent entities ("MediSys Constituent CEO"), in Queens, New York, and ROSEN directed the MediSys Constituent CEO to hire Seminerio as a consultant.

b.   On or about July 20, 1998, Seminerio met with the MediSys Constituent CEO at a restaurant in midtown Manhattan regarding the hiring of Seminerio as a consultant.

c.   On or about April 22, 2008, ROSEN spoke with Seminerio by telephone regarding a payment Seminerio was expecting from MediSys.

d.   On or about May 9, 2008, Seminerio deposited a check in the amount of $10,000 from a MediSys hospital into his consulting company's bank account.

19

e.   On or about July 9, 2008, ROSEN spoke with Seminerio by telephone regarding Seminerio's assistance in lobbying an official from the New York State Department of Health (the "State Official") regarding MediSys's attempt to acquire certain hospitals in Queens, New York (the "Caritas Hopitals").

f.   On or about August 12, 2008, ROSEN spoke with Seminerio by telephone about potential budget cuts to State health care funding.  Subsequently, on or about August 13, 2008, a co-conspirator not charged herein ("CC-1") coached Seminerio to make certain arguments to other legislators of the State of New York on behalf of a MediSys hospital and in opposition to budget cuts to State health care funding.

(Title 18, United States Code, Section 371.)

## COUNT EIGHT

### (Honest Services Fraud Conspiracy)

The Grand Jury further charges:

26.   From in or about 2003, through and including in or about 2008, in the Southern District of New York and elsewhere, DAVID ROSEN and WILLIAM BOYLAND, JR., the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with others to commit mail fraud and wire fraud in violation of Title 18, United States Code, Sections 1341, 1343, and 1346, to wit, ROSEN, while serving as the Chief Executive Officer of MediSys, paid bribes, directly and indirectly, to BOYLAND in the form of a

20

consulting job for BOYLAND, and in exchange for receiving these corrupt payments, BOYLAND, would and did undertake action, in connection with his official position as a member of the New York State Assembly, to benefit MediSys and its constituent hospitals as the opportunities arose.

27.    It was a part and object of the conspiracy that DAVID ROSEN and WILLIAM BOYLAND, JR., the defendants, and others known and unknown, having devised and intending to devise a scheme and artifice to defraud, and to deprive New York State and its citizens of their intangible right to BOYLAND's honest services, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice and attempting so to do, would and did place in a post office and authorized depository for mail matter a matter and thing to be sent and delivered by the Postal Service, and deposited and caused to be deposited a matter and thing to be sent and delivered by a private and commercial interstate carrier, and took and received therefrom such matter and thing, and knowingly caused to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matter and thing, in violation of Section 1341 of Title 18 of the United States Code.

28.    It was a further part and object of the conspiracy

that DAVID ROSEN and WILLIAM BOYLAND, JR., the defendants, and
others known and unknown, having devised and intending to devise
a scheme and artifice to defraud, and to deprive New York State
and its citizens of their intangible right to BOYLAND's honest
services, and to obtain money and property by means of false and
fraudulent pretenses, representations, and promises, for the
purpose of executing such scheme and artifice would and did
transmit and cause to be transmitted by means of wire and radio
communications in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds, to wit, electronic mails
("emails"), in violation of Section 1343 of Title 18 of the
United States Code.

### Overt Acts

29.   In furtherance of the conspiracy and to effect the
illegal objects thereof, the following overt acts, among others,
were committed in the Southern District of New York and
elsewhere:

a.   On or about September 11, 2003, following the
election of WILLIAM BOYLAND JR., the defendant, to the New York
State Assembly, DAVID ROSEN, the defendant, sent an e-mail to
another MediSys executive directing that MediSys now pay BOYLAND
as a "consultant" and not as an employee.

b.   On or about February 28, 2007, BOYLAND sent a
letter to the Speaker of the Assembly, in connection with his

efforts to secure $3 million in State funding for a MediSys hospital.

c.    On or about March 7, 2008, ROSEN, while in the vicinity of West Nyack, New York, spoke with BOYLAND by telephone.

d.    On or about May 15, 2007, BOYLAND, while in New York State, sent an e-mail to ROSEN, while he was in Minnesota, which was also sent to another MediSys executive located in Rockland County, New York, regarding BOYLAND's attempt to assist MediSys in the acquisition of the Caritas Hospitals.

e.    On or about May 16, 2007, ROSEN exchanged at least one e-mail with a MediSys executive, while in Rockland County, New York, which email discussed a meeting that BOYLAND had with the Commissioner of the New York State Department of Health regarding the acquisition of the Caritas Hospitals.

(Title 18, United States Code, Section 1349).

## COUNT NINE

### (Bribery and Travel Act Conspiracy)

The Grand Jury further charges:

30.   From in or about 2003, through and including in or about 2008, in the Southern District of New York and elsewhere, DAVID ROSEN and WILLIAM BOYLAND, JR., the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with

23

others to commit offenses against the United States, to wit, to violate Title 18, United States Code, Sections 666(a)(2) and 1952(a)(3).

31.   It was a part and an object of the conspiracy that WILLIAM BOYLAND, JR., the defendant, would and did solicit and demand and accept and agree to accept something of value from a person, to wit, DAVID ROSEN, the defendant, intending for BOYLAND, an agent of a state government, to be influenced and rewarded in connection with a business, transaction, and series of transactions of such government and agency, involving something of value of $5,000 and more, while the State of New York was in receipt of, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(1)(B).

32.   It was a part and an object of the conspiracy that DAVID ROSEN, the defendant, would and did corruptly give, offer, and agree to give something of value to a person, to wit, WILLIAM BOYLAND, JR., the defendant, with intent to influence and reward BOYLAND, an agent of a state government, in connection with a business, transaction, and series of transactions of the State of New York, involving something of value of $5,000 or more, while the State of New York was in receipt of, in any one year period,

benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance and other form of Federal assistance, in violation of Title 18, United States Code, Section 666(a)(2).

33.   It was further a part and an object of the conspiracy that DAVID ROSEN and WILLIAM BOYLAND, JR., the defendants, would and did travel in interstate commerce and use and cause to be used the mail and facilities in interstate commerce with the intent to promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of an unlawful activity, to wit, the making of corrupt payments to BOYLAND, in violation of New York Penal Law Sections 200.00 and 200.10, and thereafter would and did perform and attempt to perform an act to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of Title 18, United States Code, Section 1952(a)(3).

## Overt Acts

34.   In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   On or about September 11, 2003, following the election of WILLIAM BOYLAND JR., the defendant, to the New York

State Assembly, DAVID ROSEN, the defendant, sent an e-mail to another MediSys executive directing that MediSys now pay BOYLAND as a "consultant" and not as an employee.

b.    On or about February 28, 2007, BOYLAND sent a letter to the Speaker of the Assembly, in connection with his efforts to secure $3 million in State funding for a MediSys hospital.

c.    On or about March 7, 2008, ROSEN, while in the vicinity of West Nyack, New York, spoke with BOYLAND by telephone.

d.    On or about May 15, 2007, BOYLAND, while in New York State, sent an e-mail to ROSEN, while he was in Minnesota, which was also sent to another MediSys executive located in Rockland County, New York, regarding BOYLAND's attempt to assist MediSys in the acquisition of the Caritas Hospitals.

e.    On or about May 16, 2007, ROSEN exchanged at least one e-mail with a MediSys executive, while in Rockland County, New York, which email discussed a meeting that BOYLAND had with the Commissioner of the New York State Department of Health regarding the acquisition of the Caritas Hospitals.

(Title 18, United States Code, Section 371.)

<u>COUNT TEN</u>

(Money Laundering Conspiracy)

The Grand Jury further charges:

35. From at least in or about 2006, through and including in or about March 2011, in the Southern District of New York and elsewhere, CARL KRUGER, RICHARD LIPSKY, AARON MALINSKY, and MICHAEL TURANO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B).

36. It was a part and object of the conspiracy that CARL KRUGER, RICHARD LIPSKY, AARON MALINSKY, and MICHAEL TURANO, the defendants, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the conspiracies charged in Counts One and Two of this Indictment, knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of that specified unlawful activity, to wit, KRUGER directed that the corrupt payments he received from LIPSKY and

MALINSKY be made to bank accounts in corporate names established by TURANO for the benefit of KRUGER, TURANO, and others.

### Overt Acts

37.    In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On or about February 10, 2011, CARL KRUGER, the defendant, spoke with RICHARD LIPSKY, the defendant, about a check LIPSKY had for the bank account of Bassett Brokerage.

b.    In or about March 2010, LIPSKY caused a check dated March 10, 2010, in the amount of $11,250, to be issued to Olympian Strategic Development Corp. from the account of Richard Lipsky Associates, Inc.

c.    In or about March 2010, AARON MALINSKY, the defendant, caused a check dated March 15, 2010, in the amount of $45,000, to be issued to Olympian Strategic Development Corp. from the account of P/A Associates LLC.

d.    On or about November 15, 2006, MICHAEL TURANO, the defendant, established a bank account in the name of Olympian Strategic Development Corp.

(Title 18, United States Code, Section 1956(h)).

## COUNT ELEVEN

### (Money Laundering Conspiracy)

The Grand Jury further charges:

38.  From at least in or about 2006, through and including in or about March 2011, in the Southern District of New York and elsewhere, CARL KRUGER, SOLOMON KALISH, and MICHAEL TURANO, the defendants, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Section 1956(a)(1)(B).

39.  It was a part and object of the conspiracy that CARL KRUGER, SOLOMON KALISH, and MICHAEL TURANO, the defendants, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, unlawfully, willfully, and knowingly would and did conduct and attempt to conduct such financial transactions which in fact involved the proceeds of specified unlawful activity, to wit, the conspiracies charged in Counts Three and Four of this Indictment, knowing that the transactions were designed, in whole or in part, to conceal and disguise the nature, the location, the source, the ownership, or the control of the proceeds of that specified unlawful activity, to wit, KRUGER directed that the corrupt payments he received from KALISH be made to bank accounts

29

in corporate names established by TURANO for the benefit of KRUGER, TURANO, and others.

## Overt Acts

40.   In furtherance of the conspiracy and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about 2008, CARL KRUGER, the defendant, attended meetings with SOLOMON KALISH, the defendant, to solicit business for Adex.

b.   On or about August 30, 2007, after Adex had received a $10,000 check from the Hospice Company, KALISH signed a check to Olympian Strategic Development Corp. in the amount of $5,000 with a front memo notation, "[Hospice Company] Contract."

c.   On or about November 15, 2006, MICHAEL TURANO, the defendant, established a bank account in the name of Olympian Strategic Development Corp.

(Title 18, United States Code, Section 1956(h)).

## FORFEITURE ALLEGATION

41.   As a result of committing the offenses in which they are named in this Indictment, CARL KRUGER, RICHARD LIPSKY, AARON MALINSKY, SOLOMON KALISH, MICHAEL TURANO, DAVID ROSEN, ROBERT AQUINO, and WILLIAM BOYLAND, JR., the defendants, shall forfeit to the United States, pursuant to Title 18, United States

Code, Section 981(a)(1)(c) and Title 28, United States Code, Section 2461, all property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offenses, including but not limited to a sum of United States currency representing the amount of proceeds obtained as a result of the offenses.

### Substitute Assets Provision

42.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (1)   cannot be located upon the exercise of due diligence;

    (2)   has been transferred or sold to, or deposited with, a third person;

    (3)   has been placed beyond the jurisdiction of the Court;

    (4)   has been substantially diminished in value; or

    (5)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of each defendant up to the value of the above forfeitable property.

(Title 18, United States Code, Section 981 and
Title 28, United States Code, Section 2461)


FOREPERSON

PREET BHARARA
United States Attorney

32

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

CARL KRUGER,
RICHARD LIPSKY,
AARON MALINSKY,
MICHAEL TURANO,
SOLOMON KALISH,
DAVID ROSEN,
ROBERT AQUINO, and
WILLIAM BOYLAND, JR.,

Defendants.

INDICTMENT

S1 11 Cr. 300 (JSR)

(18 U.S.C. §§ 1341, 1343, 1346, 1349,
371, 666, 1952, and 1956)

PREET BHARARA
United States Attorney.

A TRUE BILL

_____
                        Foreperson.

4/7/11   FILED INDICTMENT, COPY USAP