```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA              :

            - v. -                    :    S1 11 Cr. 300 (JSR)

DAVID ROSEN,                          :

            Defendant.                :

- - - - - - - - - - - - - - - - - -X
```

**SENTENCING SUBMISSION BY THE UNITED STATES OF AMERICA**

```
                              PREET BHARARA
                              United States Attorney
                              Southern District of New York
                              Attorney for the United States
                                  of America
```

```
GLEN G. McGORTY
WILLIAM J. HARRINGTON
MICHAEL BOSWORTH
Assistant United States Attorneys

        - Of Counsel -
```

The Government respectfully submits this memorandum in response to David Rosen's sentencing submission dated December 23, 2011. At the outset, the Government notes that the defense submission presents a thorough account of David Rosen's life and his considerable professional accomplishments. There is no question that the Court should consider those facts in exercising its considerable discretion to fashion an appropriate sentence. Indeed, these were the factors that persuaded the Probation Office to recommend that the Court sentence the defendant to 10 years' imprisonment, a sentence substantially below the applicable Guidelines of 188-235 months.

But Title 18, United States Code, Section 3553(a) also requires that the Court impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment and advances the goal of general deterrence. Only a substantial term of imprisonment could advance those goals. David Rosen stands convicted of bribing not one, not two, but three different elected officials over the course of nearly a decade. Whatever his motives – and surely they included his desire to keep MediSys Health Network and his lucrative annual salary secure – David Rosen deliberately, systematically and successfully corrupted the political process.

Because this was a bench trial, and the Court is fully versed in the facts of the case, the Government submits this

1

brief memorandum to address only two points: (1) the proper calculation of the guidelines and (2) the defendant's contention that this crime is somehow less serious than most bribery cases.

I.   The Probation Office Properly
     Calculated the Guidelines

The defendant disputes Probation's Guidelines calculation in two respects.  First, the defendant claims that there should be no enhancement for abuse of a position of trust, arguing that such an enhancement is inapplicable because MediSys was not a victim of the crime.  Second, the defendant claims that Probation overvalued the value of the bribes the defendant paid and/or the value of the benefits received in exchange for those bribes.  Both claims are meritless.  As to the former, the abuse of trust enhancement is unquestionably appropriate under the binding law of this Circuit because the defendant's position as CEO of MediSys facilitated his crime and because MediSys – whose reputation and operations have been substantially harmed by this crime -- is properly considered a secondary victim of the defendant's crimes.  As to the latter, Probation's recommendation of a bribe value greater than $1 million represents a conservative and cautious calculation and should be adopted by the Court as a reasonable estimate of the total value of the bribes paid and/or the benefits received in exchange for the bribes.

2

A.   <u>Abuse of Trust</u>

The Probation Office correctly recommended a two-level enhancement for abuse of a position of trust.

Section 3B1.2 of the United States Sentencing Guidelines ("U.S.S.G.") provides for a two-level enhancement where a defendant "abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. §3B1.2.  <u>See</u> <u>also</u> <u>United States</u> v. <u>Cavera</u>, 550 F.3d 180, 189-90 (2d Cir. 2008).

The defendant argues that the abuse of trust enhancement is not applicable here because (1) New York State, not MediSys, is a victim of the defendant's crimes, and the defendant did not occupy any position of trust with respect to New York State; and (2) the defendant's violation of trust did not significantly facilitate the offenses for which he has been convicted.  The defendant is wrong on both counts.

<u>First</u>, MediSys unquestionably is a victim of the defendant's crimes and the defendant certainly occupied a position of trust with respect to MediSys.  To be sure, the primary victims of the defendant's crimes are New York State and its citizens: by bribing three different New York State legislators, the defendant engaged in a long-standing scheme to deprive New York State and its citizens of their intangible right

3

to the honest services of their elected representatives.

However, the case law is clear that "crimes may have more than one victim" and that an abuse of trust enhancement applies "whether the person whose trust a defendant abused was the 'primary' or a 'secondary' victim of the crime." United States v. Roberts, 660 F.3d 149, 163 (2d Cir. 2011); see also United States v. Barrett, 178 F.3d 643, 647 (2d Cir. 1999).  And MediSys is clearly a secondary victim of the defendant's crimes given the Second Circuit's recent decision in United States v. Roberts.  In Roberts, the defendant was convicted of various drug crimes he had committed while working for American Airlines unloading and loading airplanes.  The defendant argued that an abuse of trust enhancement did not apply because the United States, not American Airlines, was the victim of his drug crimes. The Second Circuit rejected that claim, finding that American Airlines was one of the defendant's victims.  The Court explained that by abusing the discretion that American Airlines had placed in him to load and unload its airplanes, the defendant "exposed his employer to harm, for example, public criticism for its employee's criminal conduct, with possible adverse consequences to the airline's business operations." Roberts, 660 F.3d at 164. The Court reasoned that "[t]his, by itself, permitted the district court to identify American Airlines as a victim of [the defendant's] crimes." Id. at 165.  The Court reasoned that such

4

a conclusion was "reinforced by the fact that [the defendant's] abuse of trust further exposed his employer to criminal scrutiny and the possibility of fines or forfeiture."  Id.

In the instant case, it is obvious that David Rosen was endowed with the discretion and the trust to supervise MediSys, make responsible decisions regarding how MediSys should spend its money, make responsible decisions regarding personnel, and make responsible decisions regarding how to advocate on MediSys's behalf in Albany.  David Rosen abused that trust.  In doing so, David Rosen, like the defendant in Roberts, "exposed his employer to harm, for example, public criticism for its employee's criminal conduct, with possible adverse consequences to the [employer's] business operations."  Roberts, 660 F.3d at 164. This, by itself, permits this Court to classify MediSys as a victim of the defendant's crimes.  Additionally, David Rosen, like the defendant in Roberts, "further exposed his employer to criminal scrutiny and the possibility of fines or forfeiture." Id. at 165.  Indeed, David Rosen's use of his position to bribe three legislators has exposed MediSys to extensive criticism in the media, heightened scrutiny from state and local regulators and an extensive criminal investigation that ultimately involved substantial and costly cooperation by MediSys's employees and MediSys itself.  Thus, David Rosen abused the trust of a victim, namely, MediSys.  See also United States v. Cusack, 229 F.3d 344,

5

349 (2d Cir. 2000) (holding that a party is a victim where defendant's abuse of trust cast the party in "extremely unfavorable light") (internal quotation marks omitted).

Second, contrary to his claim, David Rosen did violate MediSys's trust in a way that significantly contributed to his crimes. Rosen's bribery scheme succeeded precisely because he was entrusted with the discretionary authority to supervise MediSys, make responsible decisions regarding how MediSys should spend its money, make responsible decisions regarding personnel, and make responsible decisions regarding how to advocate on MediSys's behalf in Albany. It was Rosen who created no-show consulting positions for both William Boyland, Jr. and Anthony Seminerio. Rosen concealed the fact of these relationships from virtually all MediSys employees, including the members of the MediSys board, and he was able to do so because of the vast amount of independent discretion and power he had been awarded. Rosen similarly used his authority to overrule the objections of his subordinate, Bruce Flanz, when Rosen wanted to award the contract to Compassionate Care Hospice in exchange for official actions of Senator Kruger. David Rosen could never have done these things without the broad discretion and decision-making authority that MediSys had entrusted him as CEO.

Finally, to the extent the defendant appears to claim that he did not abuse MediSys's trust, that claim is frivolous.

Regardless of whether Rosen was trying to help MediSys, MediSys certainly never authorized him to commit multiple federal felonies in an effort to do so.

    B.   <u>Bribe Value</u>

United States Sentencing Guidelines ("Sentencing Guidelines") § 2C1.1(b)(2) provides that the offense level be adjusted based upon:

> [T]he value of the payment, the benefit received or to be received in return for the payment, the value of anything obtained or to be obtained by a public official or others acting with a public officials, or the loss to the government from the offense, whichever is greatest . . . .

The Sentencing Guidelines further provide that in "a case involving more than one incident of bribery or extortion, the applicable amounts . . . are determined separately for each incident and then added together."  U.S.S.G. § 2C1.1 Application Note 2.  Moreover, solicitations and attempts are treated as equivalent to the underlying offense."  U.S.S.G. § 2C1.1 Background.  Finally, the Court "need only make a reasonable estimate of the loss."  U.S.S.G. § 2B1.1 Note 3(C).

The Probation Office recommends a bribe value greater than $1 million by aggregating the amounts paid to Anthony Seminerio and William Boyland, Jr. under sham consulting arrangements ($410,000 and $175,000, respectively) with the $470,000 that Carl Kruger promised to David Rosen in state

grants.  The defendant argues that the funding request was not part of the bribery scheme, and therefore the bribe value attributed to Carl Kruger should be $0.  (Br. 15).  He thus argues for a bribe value between $400,000 and $1,000,000.

At the outset, it is worth nothing that either of the Seminerio and Boyland relationships alone would justify a bribe value of $1 million.  With respect to Seminerio, the Probation Office attributed a bribe value of $410,000, based only on MediSys payments to Seminerio's consulting company directly. This is a very conservative figure.  For one thing, this excludes additional monies that MediSys steered to third parties to please Seminerio. More importantly, and in any event, the Probation Office could have used an estimate of $27 million, which represents the amount of money that Seminerio sought to obtain for MediSys when he advocated for the forgiveness of certain loans that Brookdale Hospital owed to the State.  (GX 1229).

With respect to Boyland, the Probation Office attributed the value of $170,000, based on the amount of money paid to Boyland under the sham consulting contract.  The Court could adopt an alternative calcuation, based on the fact that Boyland sought to obtain multi-million grants for MediSys entities from the New York State Assembly on at least two occasions. (GX 2303 (requesting $3 million for Brookdale Hospital in 2004) & GX 2305 (requesting $3 million for Jamaica Hospital in

8

2007)).  Thus, even if David Rosen was correct that the value of his bribes to Carl Kruger was somehow $0, the most reasonable estimate of the bribe value easily exceeds $1 million based on the corrupt relationship with Seminerio and/or Boyland alone.

In any event, the defendant is simply incorrect that the value of the benefits associated with the bribery of Senator Kruger was $0.  The trial record is clear that the defendant actively sought funds from Senator Kruger, regardless of whether he initiated the original requests for funding.  As noted in the Court's Findings of Fact, in the spring and summer of 2008, the defendant was actively involved with developing proposals for over $400,000 that Kruger was willing to allocate to MediSys, and the defendant only learned that Kruger had "c[o]me through" on the grants in July 2008.  See Findings of Fact and Conclusions of Law dated September 12, 2011 at 32-33.  Throughout this time, Kruger pressed Rosen for his signature on the Compassionate Care contract.  Id., at 34 ("Indeed, at least every few weeks from April to September 2008, Kruger or someone on his behalf contacted Rosen to follow-up on whether he had 'signed the contract.'").

The Government does not disagree with the defense's implicit contention that Kruger's assistance on the Caritas hospitals was, no doubt, of even greater value and import to David Rosen than Kruger's assistance with State grants involving

9

over $400,000.  But it is difficult to put a precise figure on the Caritas Hospitals' value to Rosen.  And in any event, at a bare minimum, the value of the benefits Rosen received from Kruger would have to have included the over $400,000 that MediSys, in fact, was awarded at Kruger's behest and with Rosen's active involvement.  No reasonable estimate of the Kruger relationship could conclude that the value of that bribery relationship was $0.  And when taken in aggregate with Seminerio and Boyland, there is simply no reasonable question that a reasonable estimate of the value of the bribes or benefits of the bribes received in this case is over $1 million.

II.  David Rosen's Crimes Involve A
     Gross Betrayal of the Public Trust

        David Rosen contributed to a massive and systemic betrayal of the public trust.  By plying two legislators with over half a million dollars of no-show consulting jobs and by attempting to award business to please a third legislator, David Rosen committed the core conduct that the bribery statutes seek to criminalize: trading money for official favors.  If anything, contrary to the arguments of the defense submission, what makes Rosen's conduct so atypical is that he is the rare individual who bribed not one, not two, but three different legislators over the course of nearly a decade.  And none of Rosen's corrupt relationships can fairly be described as one-off bribes.  The corrupt relationships lasted for the greater part of a decade

10

and, no doubt, would have continued but for the FBI's arrest of
Anthony Seminerio in the Fall of 2008.

In justifying its recommendation that Rosen be
sentenced to 10 years' imprisonment, the Probation Office stated:

> [Rosen's] results oriented approach, however,
> undoubtedly went hand-in-hand with his criminal conduct
> in this case and, in his mind, may have justified his
> actions.  We cannot overlook that he was willing to
> engage in a culture of corruption which permeated the
> business dealings and government advocacy on which
> MediSys substantially relied.  The long-term aspect of
> the bribery scheme, as well as the flippant manner in
> which elected public officials were corruptly utilized
> to effectuate business dealings (no matter how noble
> the business' goal) is an egregious offense.

See Presentence Report at 33.  The Government certainly agrees.
The harm caused by David Rosen's bribery scheme is precisely the
sort that makes the crime of bribery so offensive to a
representative democracy.  Anthony Seminerio, William Boyland,
Jr. and Carl Kruger were elected to act solely in the interests
of their constituents.  David Rosen helped each of them betray
their constituents, in particular, and our system of governance
more generally.

Rosen's attempts to distinguish and minimize his crimes
are as inaccurate as they are unrepentant.  First, the defendant
stresses the limited success that Seminerio, Boyland, and Kruger
had in helping him achieve his ends (Br. 4-10). But Rosen fails
to acknowledge his repeated efforts to capitalize on these
officials' influence with respect to the issues that Rosen cared

11

about most, namely, the State budget and the disposition of the
Caritas Hospitals.  Similarly, Rosen completely ignores the fact
that he himself thought the three men could be helpful to him.
On this point, Rosen's admissions to the FBI informant are more
revealing than his sentencing submission:

> Tony ... has the clout to make it happen.  And you
> know, you're not going to send him up there alone.
> You're not going to have one guy that carries us -- you
> really got to from every which way...
> …
> It is a labyrinth and you gotta have skilled people …
> and you gotta push a lot of buttons.  It's not about
> pushing one button... . But you know if you're serious
> about a project, you're going to do all the things that
> you need to do.

(GX 1320R).

        Second, Rosen argues that his actions were selflessly
motivated and that he simply strove to help his hospitals and the
impoverished communities they served.  While Rosen is now eager
to untangle everything he did at MediSys from his generous
compensation and the growth in his own power and influence, the
characterization of his motives cannot be completed in such a
straightforward manner.  As the Probation Office noted,

> It should not be overlooked that Rosen has been well
> compensated in his role as a hospital administrator.
> Notwithstanding that his service in the health-care
> industry has been a noble endeavor, beneficial through
> the services provided as well as in creating jobs,
> there was nevertheless a personal incentive (in the
> form of job security and compensation) for him to
> continue to grow and expand the MediSys brand.

See Presentence Report at 33. Indeed, as hospitals around him

were shuttered, the defendant earned roughly $1.5 million every year running a network of distressed hospitals that relied almost entirely on decisions made in New York State.

Finally, he argues that his crimes did not harm the public good because he sought to strengthen the administration of health care to the poor.  However noble the goal of helping the poor, governmental decisions should be made by legislators free from the taint of bribery.  For one thing, bribery has a concrete distorting effect on governmental decisions of significance.  If New York State wanted to spend money helping distressed hospitals, why Rosen's hospitals as opposed to their competitors? More importantly, any bribe harms the public good - it robs the law-abiding citizen of the ability to stand on equal-footing with the bribe payer, it undermines the public's faith in elected leaders, and it imperils moral and democratic governance.

<u>CONCLUSION</u>

The Government respectfully requests that the Court impose a substantial incarceratory sentence commensurate with the significance and gravity of David Rosen's criminal conduct.